IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS ANTONIO RIVAS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-1419 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Lenihan |
| C.O. RONALD HUNT, | ) | |
| C.O. KEITH MANKER, | ) | |
| | ) | |
| Defendants. | ) | ECF No. 62 |

## MEMORANDUM OPINION

**Lenihan, M.J.**

Presently before the Court is the Motion for Summary Judgment filed by Defendants C.O. Ronald Hunt ("Hunt") and C.O. Keith Manker ("Manker") (collectively "Defendants"). (ECF No. 62.) For the reasons discussed below, the Motion will be granted as to Defendant Manker as to the § 1983 claim only, and denied as to Defendant Hunt.

Plaintiff Luis Antonio Rivas ("Rivas" or "Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from inmate assault while housed at the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh"). Plaintiff also filed a supplemental state law negligence claim against both Defendants.[1]

FACTS

The following facts are undisputed unless otherwise indicated, and are taken from the parties' Concise Statements of Undisputed Material Facts and Responses thereto at ECF Nos. 64, 71 and 73.[2]

---

[1] The Defendants moved for summary judgment only as to Plaintiff's claim pursuant to 42 U.S.C. § 1983. Therefore, the negligence claim alleged in Count II against both Defendants remains (ECF No. 56 at ¶¶ 51-55).
[2] Where appropriate, the Court also cites to underlying documentation and deposition transcripts.

Luis Antonio Rivas ("Plaintiff" or "Rivas") is an inmate with the Pennsylvania Department of Corrections since August 31, 1998. (ECF Nos. 64 & 71 at ¶ 1, ECF No. 72 at 6-9.) Plaintiff was transferred to SCI-Pittsburgh from SCI-Houtzdale on February 3, 2011. (ECF Nos. 64 & 71 at ¶ 2.) He was placed in the Restrictive Housing Unit ("RHU") on August 24, 2011. (ECF Nos. 64 & 71 at ¶ 6.) On September 2, 2011 at approximately 9:30 a.m., Plaintiff was escorted to the RHU exercise yard by Defendants Hunt and Manker. Plaintiff was placed in the RHU exercise yard, and while officers were attempting to remove his handcuffs, inmate Darren Miller ("Miller") attacked Rivas and struck him in the head with a baseball size piece of asphalt. (ECF Nos. 64 & 71 at ¶ 9.) Defendants then ordered Miller to drop the piece of asphalt and stop the assault. Miller complied with the order, and the Defendants entered the exercise unit and secured Miller. (ECF No. 72 at 23-24.) Defendant Manker escorted Plaintiff to the unit triage to receive medical treatment for his injuries. (ECF Nos. 64 & 71 at ¶ 13.)

At the time of the attack, Manker was assigned as a Utility Officer; he was not a member of the RHU staff and did not work on the pod. (ECF Nos. 64 & 71 at ¶ 3.) Instead, as a Utility Officer, Manker was required to perform various functions throughout the facility on any given shift, but his main function was as an escort officer. (ECF No. 65-3 at ¶ 4.)

Conversely, Hunt had been a member of the RHU staff for the past two (2) years and nine (9) months before the attack. (ECF No. 72 at 41.)

Finally, it is undisputed that Plaintiff did not inform Defendants that he was having problems with Inmate Miller, and Plaintiff did not tell the Defendants not to place him in the same exercise yard with Miller. (ECF Nos. 64 & 71 at ¶ 35.) It is also undisputed that Plaintiff did not have a separation order from Miller. (ECF Nos. 64 & 71 at ¶ 36.) Plaintiff did not want to press charges against Miller for the assault. (ECF Nos. 64 & 71 at ¶¶ 33-34.)

## LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323-25). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e) (1963)). *See also Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex*, 477 U.S. at 322).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible,

it is not necessary for it to be in admissible form. See Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 324; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

As quoted by Defendants, this Court summarized the Eighth Amendment legal standard pertaining to failure to protect in *Jones v. Day,* No. Civ. A. 03-1585, 2007 WL 30195 (W.D. Pa. Jan. 4, 2007), as follows:

> The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" [Hamilton v. Leavy,] 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Although, "[i]t is not . . . every injury suffered by one prisoner at the hands of

4

> another that translates into constitutional liability for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981)). A plaintiff must prove more than that he had a fight with another inmate, *see Beard v. Lockhart*, 716 F.2d 544, 545 (8th Cir. 1983), and mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). To succeed, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. *Farmer*, 511 U.S. at 834-37.
>
> In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be). *Hamilton v. Leavy*, 117 F.3d at 747. It is not an objective test for deliberate indifference; rather, *the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known.* "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." *Id.* In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious.
> . . .
> Thus, in order to survive defendants' summary judgment motion, a plaintiff is obligated to produce sufficient evidence to support the inference that defendants "'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." *Id*. at 138.

*Jones*, 2007 WL 30195, at *3-4 (emphasis added).

In support of their Motion for Summary Judgment, Defendants argue that Plaintiff cannot prove an Eighth Amendment violation for failure to protect because he cannot show that

Defendants were deliberately indifferent. That is, according to Defendants, Plaintiff cannot show that Defendants "personally knew that there was any trouble with Rivas [and] Miller and 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" (ECF No. 63 at 4 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001)). Defendants emphasize that "[t]here was no indication whatsoever that inmate Miller presented a danger to Plaintiff." (*Id.*)

Plaintiff responds that he has come forward with evidence from which a reasonable jury could conclude that Defendants were aware of the threat posed by Miller and were deliberately indifferent to it. First, Plaintiff comes forward with evidence of Miller's prison history since at least 1999, and up until July 2013. During this time, Miller had 143 misconducts, occurring at various institutions. Out of these 143 misconducts over 14 years, Miller was charged with 19 assaults and 6 fighting misconducts. Miller was also issued misconducts for using abusive, obscene or inappropriate language; refusing to obey an order; loaning or borrowing property; unauthorized use of mail or telephone; tattooing or other forms of self-mutilation; possession of contraband including money; and indecent exposure. Plaintiff, however, has come forward with no evidence that these Defendants were aware of these misconducts, and/or that as a result of these misconducts, would have known that Miller posed a threat to Plaintiff. The standard is not what these Defendants should have known, but what they did know. *See Hamilton*, 117 F.3d at 747.

Next, Plaintiff comes forward with a "Memorandum of Interview" and Statement of CO Shawn Lacich that was prepared as a result of the subsequent investigation. The "Memorandum of Interview" reflects a statement by Lacich that prior to the attack, the entire RHU staff was aware that "Rivas and Miller had been battling back and forth verbally for a while." (ECF No.

6

72 at 17.) In his attached Statement, CO Lacich further indicates that "[i]n my observations on the unit during the months of August [and] September the situation between [Rivas and Miller] was a disaster waiting to happen." (ECF No. 72 at 19.) Hence, Plaintiff has come forward with evidence to raise a disputed issue of material fact as to whether CO Hunt knew that Miller posed a substantial risk of serious harm to Plaintiff, and was deliberately indifferent to that risk when he placed Plaintiff in the yard with Miller, while Miller was unrestrained. Lacich's statement in the interview is unequivocal that the entire RHU staff was aware of the conflict. Therefore, Defendant Hunt's Motion for Summary Judgment on Plaintiff's § 1983 claim will be denied.

As to Defendant Manker, however, Plaintiff has come forward with no evidence that Manker was aware of facts from which the inference could be drawn that Manker knew of the risk. As noted above, Manker was assigned as a Utility Officer, and Plaintiff has come forward with no evidence that Manker would have been privy to the same information as the RHU staff.

Plaintiff also emphasizes that the Office of Special Investigations and Intelligence ("OSII") concluded that Defendants violated certain DOC policies. Specifically, the OSII concluded that Defendants Manker and Hunt violated Department Policy 06.05.01, § 1.H.2.j. This section refers to the process for transferring an inmate to the exercise yard. Although violation of a department policy may provide at the very least, some evidence of negligence, without more, such violation does not rise to the level of deliberate indifference. That is, simply because Manker did not comply with this Department Policy, does not suggest that he was aware that Miller posed a substantial risk of serious harm to Plaintiff, and that Manker deliberately disregarded the risk.

Similarly, Plaintiff directs the Court to the fact that prison officials have access to reports that assign inmates certain codes based upon an inmates' behavior and/or status as an inmate.

7

Specifically, Plaintiff points to the fact that around the time of the attack, Miller was coded H, Z, and O. The H code signified that Miller had demonstrated violent behavior or engaged in facility disturbances. The Z code signified that Miller could not be celled with another inmate. The O code signified that Miller had or exhibited medical conditions, mental health conditions, or vulnerable traits that required an elevated level of observation. Even assuming that Manker was aware of Miller's coding, this information does not does suggest that Manker knew that Miller posed a substantial risk of serious harm to Plaintiff, and Manker deliberately disregarded the risk. Therefore, Defendant Manker's Motion for Summary Judgment will be granted.

CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment (ECF No. 62) will be granted in part and denied in part. It will be granted as to Defendant Manker as to the § 1983 claim only, and denied as to Defendant Hunt.

An appropriate Order will follow.


Dated: March 31, 2015

                           BY THE COURT

                           _____
                           LISA PUPO LENIHAN
                           United States Magistrate Judge

cc: All counsel of record
   Via electronic filing